UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MOR USA, INC., A NEW JERSEY
CORPORATION,

                      Plaintiff,           **REPORT AND RECOMMENDATION**

      v.                                             19-cv-07283 (AMD) (ST)

ADAM TRADING, INC., A NEW YORK
DISSOLVED CORPORATION, AND WALID
M. ALI, AN INDIVIDUAL,

                      Defendants.
----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Mor USA, Inc. ("Plaintiff") commenced this action against Adam Trading, Inc. ("Adam Trading") and Walid M. Ali ("Ali") (together, "Defendants") on December 30, 2019, alleging causes of action under New York State law and the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a-t ("PACA"). Defendants have failed to answer or otherwise respond to Plaintiff's Complaint, and Plaintiff has filed a Motion for Default Judgment against Defendants. The Honorable Ann M. Donnelly referred Plaintiff's Motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that Plaintiff's Motion for Default Judgment be GRANTED.

I. **BACKGROUND**

    **a. Factual Background**

Plaintiff is a New Jersey corporation with its principal place of business in Avondale, Pennsylvania. Compl. ¶ 1. Adam Trading is a New York dissolved corporation with its principal place of business in Staten Island, New York, and Ali is an individual who resides in

1

Staten Island, New York. *Id.* ¶ 2. During the relevant time period, Ali was an officer, director, investor, shareholder, or employee of Adam Trading and controlled or was in a position to control Adam Trading's PACA trust assets. *Id.* ¶¶ 48-49. Ali had knowledge of and responsibility for Adam Trading's operations and financial dealings, a duty to ensure that Adam Trading fulfilled its duties as a trustee of the PACA trust, and a duty to ensure that Adam Trading maintained sufficient PACA trust assets to pay PACA trust beneficiaries as their claims became due. *Id.* ¶¶ 50-52.

Between April 1, 2019 and September 20, 2019, Plaintiff and Adam Trading entered into contracts for Plaintiff to sell Adam Trading produce in interstate commerce. *Id.* ¶ 6. The total invoice amount of the produce was $73,119.04. *Id.* Adam Trading accepted the produce without objection, but, despite Plaintiff's demands, failed to pay for the produce. *Id.* ¶¶ 7-8. Plaintiff sent Adam Trading invoices that reflected the agreed upon amounts that Adam Trading owed. *Id.* ¶ 9. Adam Trading did not deny receipt of the invoices and produce, nor did it deny the terms and conditions stated on the invoices. *Id.* ¶ 10. During the time of the transactions, Plaintiff held a valid PACA license that was issued by the United States Department of Agriculture. *Id.* ¶ 32; *see* Decl. Robin Sporn Supp. Mot. Default J. ("Sporn Decl."), Ex. 1, Dkt. No. 13-3.

### b. Procedural History

Plaintiff commenced this action against Defendants on December 30, 2019. *See generally* Compl. Plaintiff served Adam Trading on January 31, 2020 and Ali on March 5, 2020. Summonses Returned Executed, Dkt. Nos. 7, 10. Defendants failed to answer or otherwise respond to Plaintiff's Complaint. Thereafter, Plaintiff requested default be entered against Defendants. Reqs. Certificates Default, Dkt. Nos. 8, 11. The Clerk of Court entered default

against Adam Trading on March 16, 2020 and against Ali on April 6, 2020.  Clerk's Entries Default, Dkt. Nos. 9, 12.

Before the Court is Plaintiff's Motion for Default Judgment, filed on May 12, 2020.  *See generally* Mot. Default J. ("Mot."), Dkt. No. 13.  Plaintiff's Motion argues Adam Trading breached its contract with Plaintiff, Plaintiff is a valid PACA trust beneficiary of Adam Trading, Ali is personally liable to Plaintiff, and Plaintiff is entitled to contractual attorneys' fees and pre-judgment interest in addition to damages.  *See id.*  In sum, Plaintiff's Motion seeks: a declaration that Plaintiff has a valid PACA trust claim against Adam Trading; and judgement holding Defendants jointly and severally liable to Plaintiff for principal damages, costs, attorneys' fees, pre-judgment interest, and post-judgment interest.  *Id.* at 8.  In support of its Motion, Plaintiff submits the Declaration of Robin Sporn, who is Plaintiff's sales manager, and the Declaration of Steven E. Nurenberg ("Nurenberg"), who is an attorney for Plaintiff.  *See generally* Sporn Decl.; Decl. Steven E. Nurenberg Supp. Mot. Default J. ("Nurenberg Decl."), Dkt. No. 13-4.

On January 29, 2021, the undersigned held a hearing on Plaintiff's Motion.  Min. Order Mot. Hr'g, Dkt. No. 16.  In connection with that hearing, Plaintiff filed documents supporting its damages claims.  *See generally* Pl.'s Resp. Ct.'s Jan. 18, 2021, Min. Order ("Resp. Min. Order"), Dkt. No. 14; Pl.'s Notice Suppl. Filing Supp. Mot. Default J. ("Suppl. Filing"), Dkt. No. 15.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after a default has been entered against a defendant, and the defendant fails to appear or move to

3

set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to issue a default judgment, the Court has the responsibility to ensure that plaintiff's "allegations establish [defendant's] liability as a matter of law." *Id.*; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citation omitted).

**III. DISCUSSION**

    **a. This Court has Jurisdiction**

This Court has jurisdiction because Plaintiff's claims arise in part under PACA. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). In a "civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of

4

the same case or controversy . . . ." *Id.* § 1367(a).  This Court may therefore exercise supplemental jurisdiction over Plaintiff's breach of contract claim.

Venue is proper because a substantial part of the events and omissions underlying this lawsuit occurred in this district.  *Id.* §1391(b).

### b. Defendants have Defaulted

Even though Plaintiff properly served Defendants, Defendants failed to answer or otherwise respond to Plaintiff's Complaint.  *See* Summonses Returned Executed.  In response to Plaintiff's requests, the Clerk of Court entered Defaults against Defendants.  *See* Reqs. Certificates of Default; Clerk's Entries Default.  Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Defendants are properly considered to have admitted all factual allegations in the Complaint and are subject to this Court's assessment of their liability thereby.

### c. Adam Trading is Liable for Breach of Contract

Plaintiff alleges Adam Trading is liable for breaching contracts it entered with Plaintiff between April 1, 2019 and September 20, 2019.  Compl. ¶¶11-16.  The invoices that Plaintiff submitted in support of its claim do not contain a choice of law provision, though Plaintiff cites New York case law.  *See* Mot. at 2.  "New York law provides that parties may consent to the law of a particular jurisdiction through their conduct, absent 'strong countervailing public policy.'"  *Nedspice US Inc. v. Castella Imps., Inc.*, 20-CV-1802 (ARR) (SIL), 2020 WL 6785335, at *2 (E.D.N.Y. Oct. 22, 2020) (citations omitted), *adopted by* 2020 WL 6784178 (E.D.N.Y. Nov. 18, 2020).  Here, Adam Trading is a dissolved New York corporation that had its principal place of business in New York and Plaintiff cites New York law in support of its breach of contract claim.  Accordingly, the Court will apply New York law.  *See id.* (applying New York law to resolve breach of contract claim where defendant in default is a New York corporation with its

5

principal place of business in New York and out-of-state plaintiff cites New York law in support of its claims). Under New York law, a plaintiff in a breach of contract action must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted).

Plaintiff's well-pleaded allegations establish the existence of an agreement. The Complaint states that Plaintiff and Adam Trading entered into contracts for shipments of produce. Compl. ¶ 12. The Sporn Declaration provides further detail, explaining the contracts were for "twenty-five shipments of Dates," and annexes invoices and bills of lading related to the shipments. Sporn Decl. ¶ 19; Sporn Decl., Ex. 2; *see also* Suppl. Filing, Exs. A-B. Both the Complaint and the Sporn Declaration indicate that Plaintiff fully performed. Compl. ¶ 15; Sporn Decl. ¶ 13. Both the Complaint and the Sporn Declaration support a finding that Adam Trading breached by failing to pay for the produce it purchased from Plaintiff. Compl. ¶ 13; Sporn Decl. ¶ 14. As a result of Adam Trading's breach, Plaintiff suffered damages in the amount it was owed under the contracts. Compl. ¶ 16; Sporn Decl. ¶ 15. Accordingly, this Court respectfully recommends finding Adam Trading liable for breach of contract.

### d. Plaintiff is a Valid PACA Trust Beneficiary of Adam Trading

Plaintiff seeks an Order declaring it is a valid trust beneficiary of Adam Trading under PACA. Mot. at 3; *see* Compl. ¶¶ 17-35. Congress added the trust provision, 7 U.S.C.§ 499e(c), to PACA to increase security for sellers; the provision requires dealers to hold perishable commodities and sales proceeds in trust for the benefit of unpaid sellers. *See Am. Banana Co. v. Republic Nat'l Bank of N.Y., NA*, 362 F.3d 33, 37 (2d Cir. 2004) (discussing history of PACA). To establish the existence of a PACA trust, the seller must demonstrate:

6

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to do so.

*S. Katzman Produce, Inc. v. Won*, 08-CV-2403 (KAM) (VVP), 2009 WL 2448408, at *4 (E.D.N.Y. Aug. 7, 2009).

First, PACA defines "perishable agricultural commodity" as "[f]resh fruits and fresh vegetables of every kind and character," "whether or not frozen or packed in ice." 7 U.S.C. § 499a(b)(4). Plaintiff sold dates to Adam Trading. Sporn Decl. ¶ 5; *see* Compl. ¶¶ 6, 26. PACA's definition of "perishable agricultural commodity" includes dates. *See* Example Commodities Covered by PACA, 6, https://www.ams.usda.gov/sites/default/files/media/Commodities%20Covered%20by%20PACA.pdf. Thus, the commodities sold were perishable agricultural commodities.

Second, PACA defines "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6). "Wholesale or jobbing quantities" are "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). Plaintiff identifies five shipments of dates, purchased by Adam Trading from Plaintiff, that each exceed 2,000 pounds. Sporn Decl. ¶ 6. Accordingly, Adam Trading is a "dealer."

Third, PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof . . . ." 7 U.S.C. § 499a(b)(3). The contracts between Plaintiff and Adam Trading concerned "shipments of Dates . . . in interstate commerce." Sporn Decl. ¶ 5; *see* Compl. ¶¶ 6, 26. Further, the bills of lading that

7

Plaintiff submitted indicate that the shipments traveled from New Jersey to New York. *See* Sporn Decl., Ex. 2. Therefore, the shipments occurred in interstate commerce.

Fourth, Plaintiff has not received payment for the dates it sold to Adam Trading. Compl. ¶¶ 8, 34-5; Sporn Decl. ¶¶ 14-15.

Fifth, PACA requires a seller to provide to dealers written notice of the seller's intent to preserve the benefits of the trust. 7 U.S.C. § 499e(c)(3)-(4). Plaintiff provided written notice of its intent to preserve the trust benefits by timely sending to Adam Trading invoices that included the information and language prescribed by the statute. Compl. 32-33; Sporn Decl. ¶¶ 8-11.; *see* Sporn Decl., Ex. 2; Suppl. Filing, Ex. B.

For the foregoing reasons, Plaintiff has established the existence of a PACA trust. The Court thus respectfully recommends finding that Plaintiff is a beneficiary of the trust as an unpaid seller and has a valid PACA trust claim against Adam Trading.

### e. Ali is Liable for Adam Trading's Failure to Maintain PACA Trust Assets

Plaintiff asserts that Ali is personally liable under PACA because he breached his fiduciary duty to ensure Adam Trading's PACA trust assets were used to satisfy Plaintiff's PACA trust claim. Compl. ¶¶ 47-55; Mot. at 5-6. "An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (collecting cases).

Plaintiff contends Ali was an officer, director, investor, shareholder, or employee of Adam Trading who controlled or was in a position to control Adam Trading's PACA trust assets. Compl. ¶¶ 48-49; Mot. at 6. Further, Plaintiff avers Ali failed to "ensure that Adam Trading fulfill its duties as PACA trustee and maintain sufficient PACA Trust Assets." Mot. at 6; *see*

8

Compl. ¶¶ 50-54. Therefore, Plaintiff has alleged facts sufficient to establish Ali's liability for the amount owed. *See, e.g.*, *GM Produce Sales LLC v. Sam Jin World Trading Inc.*, 12-CV-4192 (ENV) (JO), 2014 WL 4364817, at *3 (E.D.N.Y. Aug. 11, 2014) (plaintiff adequately pleads individual defendant's personal liability where complaint "alleges that she was 'in a position of control over the PACA trust assets' in which [Plaintiff] claims an interest and failed to either preserve a PACA trust or remit payment"), *adopted by* 2014 WL 4385415 (E.D.N.Y. Sept. 3, 2014); *Hop Hing Produces Inc. v. X & L Supermarket, Inc., et al.*, CV 2012-1404 (ARR) (MDG), 2013 WL 1232919, at *3 (E.D.N.Y. Mar. 4, 2013) ("plaintiff's allegations that [individual defendants] are persons with control over X & L's PACA assets are sufficient to establish their personal liability for the outstanding amounts"), *adopted by* 2013 WL 1232483 (E.D.N.Y. Mar. 27, 2013). Thus, the Court respectfully recommends finding Ali liable, jointly and severally with Adam Trading, to Plaintiff.

### f. Plaintiff is Entitled to Attorneys' Fees and Pre-judgment Interest

Plaintiff also argues that it is entitled to attorneys' fees and costs, as well as interest. Mot. at 6-8. "[W]here the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." *Coosemans Specialties, Inc.*, 485 F.3d at 709. The same is true of interest and costs. *See, e.g.*, *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 272 (E.D.N.Y. 2019) ("District courts routinely enforce contractual prejudgment interest provisions under PACA); *Horti Americas, LLC v. Steven Produce King, Inc.*, 16 Civ. 889 (ILG) (RER), 2017 WL 3610519, at *4 (E.D.N.Y. Aug. 22, 2017) ("Once incorporated into the agreement, both attorney's fees and prejudgment interest may be awarded in connection with transactions under PACA, and are subject to the PACA trust.") (collecting cases); *Dayoub Mktg., Inc. v. Produce*

9

*Corp.*, 04 Civ. 3125 (WHP), 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005) ("when the parties' contract so provides . . . the interest and collection costs become subject to the PACA trust together with the principal debt") (citations omitted)).

Here, the invoices state, "Buyer agrees to pay all costs of collection, including attorneys' fees and costs as additional sums owed in connection with this transaction . . . . Interest will accrue on any past-due balance at the rate of 1 and 1-2% per month (18% per annum))." Sporn Decl., Ex. 2. Adam Trading did not object to the terms on the invoices. Compl. ¶ 10. Accordingly, the Court respectfully recommends finding that Plaintiff is entitled to attorneys' fees, costs, and interest.

### g. Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a defaulting defendant, the plaintiff must then establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2).

Based on Plaintiff's submissions and the January 29, 2021 hearing on Plaintiff's Motion, the Court makes the following recommendations as to damages.

i. **Principal Damages**

Plaintiff claims it is owed principal damages of $73,119.04 for twenty-five shipments of dates to Adam Trading. Mot. at 2; Sporn Decl. ¶ 5; *see* Compl. ¶ 6. Plaintiff submitted twenty-four invoices that reflect a total amount owed of $73,170.00. *See* Sporn Decl., Ex. 2; Suppl. Filing, Ex. B. The remaining transaction is identified in a summary of the outstanding invoices prepared by Plaintiff's counsel (the, "Summary"). *See* Nurenberg Decl., Ex. 2. It is not designated by a separate invoice; rather, it is a deduction of $50.96 from the amount owed on one of the invoices (Invoice No. 280) that Plaintiff submitted. *See id.* Accordingly, the Court finds that Plaintiff has established it is entitled to the requested amount of principal damages, and respectfully recommends awarding Plaintiff principal damages of $73,119.04.

ii. **Costs and Attorneys' Fees**

Plaintiff seeks costs in the amount of $658.00 and attorneys' fees in the amount of $5,813.50. Mot. at 8. The costs include a filing fee, fees for service of process on Defendants, and a fee paid to locate Ali. Nurenberg Decl. ¶ 15. Plaintiff submits documentation for each of these costs. Nurenberg Decl., Ex. 3. The Court finds these costs to be reasonable.

In a PACA matter where the parties' contract provides for a right to attorneys' fees, the "plaintiff bears the burden of proving the reasonableness of the fees sought." *Cent. Produce Corp. v. 32-18 M&M Corp.*, 17-CV-3841 (LDH) (RLM), 2018 WL 4327923, at *8 (E.D.N.Y. July 9, 2018), *adopted by* 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018). "A presumptively reasonable fee is reflected by the lodestar, 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, 17-CV-2222 (CBA) (PK), 2018 WL 1136037, at *7 (E.D.N.Y. Jan. 30, 2018) (quoting *Millea v. Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011), *adopted by* 2018

11

WL 1136085 (E.D.N.Y. Feb. 28, 2018). Courts located within the Second Circuit apply the "forum rule" and assess the reasonableness of requested hourly rates in light of the hourly rates awarded in the district where the court sits. *Cent. Produce*, 2018 WL 4327923, at *8.

The attorneys' fees requested are based on the work of attorneys Nurenberg and Steven M. De Falco ("De Falco"), and paralegal Luanne Rogers ("Rogers"). Nurenberg Decl. ¶¶ 3-6. Nurenberg has been licensed to practice law since 1989, has focused on PACA matters since 2006, and bills at an hourly rate of $335.00. *Id.* ¶¶ 3-4. He expended 1.4 hours on this matter. *Id.* ¶ 9. De Falco has practiced law for more than sixteen years and bills at an hourly rate of $330.00. *Id.* ¶ 5. In the instant matter, De Falco billed 5.1 hours at his typical rate of $330.00 per hour, 3.7 hours at $315.00 per hour, 0.2 hours at $195.00 per hour, and 0.8 hours at no cost. *Id.* ¶ 9. Rogers is a Florida Registered Paralegal, Advanced Certified Paralegal with a specialty designation in litigation, and a Florida Certified Paralegal. *Id.* ¶ 6. Rogers has worked as a certified paralegal for more than twenty-five years and bills at an hourly rate of $195.00. *Id.* She expended 12.6 hours on this matter. *Id.* ¶ 9. Plaintiff submits detailed fee records that explain the nature of the work performed by Nurenberg, De Falco, and Rogers, as well as the amount of time spent on each task. Nurenberg Decl., Ex. 1.

The Court finds the requested attorneys' fees reasonable as to Nurenberg and De Falco. *See, e.g.*, *Double Green Produce*, 387 F. Supp. 3d at 273 (finding attorneys' hourly rates of $375 and $400 reasonable); *Horti Americas*, 2017 WL 3610519, at *4 (finding attorney's hourly rate of $375 reasonable). Rogers' rate, however, exceeds the typical hourly rate for paralegals in the Eastern District of New York. Courts in this district have found that a range of $70 to $100 per hour is reasonable for paralegals. *Rudler v. Houslanger & Assocs., PLLC*, 18-cv-7068 (SJF) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (collecting cases). Given Rogers'

12

extensive experience, the Court finds $100 per hour to be a reasonable rate. Having reviewed the fee records, the Court finds the amount of time that Nurenberg, De Falco, and Rogers expended on this matter to be reasonable.

Based on the foregoing, the Court respectfully recommends awarding Plaintiff $658.00 in costs and a reduced amount of $4,616.50 in attorneys' fees.

### iii. Interest

Plaintiff seeks $13,521.67 in pre-judgment interest accrued through May 12, 2020, the date it filed its Motion for Default Judgment, with interest thereafter accruing at a per diem rate of $36.06 until judgment is entered. Mot. at 8. Plaintiff also requests post-judgment interest. *Id.*

As a preliminary matter, the Court notes that Plaintiff's requests for pre-judgment interest are calculated using the 18% annual interest rate stated on the invoices. *See* Sporn Decl., Ex. 2; Nurenberg Decl., Ex. 2. This contractual interest rate is reasonable. *See Double Green Produce*, 387 F. Supp. 3d at 272 (finding 18% contractual interest rate reasonable).

#### 1. Pre-judgment Interest Accrued Through May 12, 2020

Plaintiff calculates pre-judgment interest in part based on the number of days that each invoice was overdue as of May 12, 2020. *See* Nurenberg Decl., Ex. 2. PACA requires dealers to "make full payment promptly." 7 U.S.C. § 499b(4). "[F]ull payment promptly" is defined as "within 10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5); *see Havana Potatoes of N.Y. Corp. v. U.S.*, 136 F.3d 89, 91 (2d Cir. 1997). Accordingly, PACA requires dealers to pay within ten days of accepting produce. This payment period applies "unless the parties have agreed, in writing and before entering into the transaction, to different payment terms." *Havana Potatoes of N.Y.*, 136 F.3d at 91 (citing 7 C.F.R. § 46.2(aa)(11)).

Plaintiff clarifies that "the parties did not enter into a written, pre-transaction agreement to alter the regulatory 10-day payment term." Resp. Min. Order at 3. The statutory ten-day payment period thus applies to each transaction, after which time payment is overdue. The Summary properly indicates a "payment due date" that is ten days after the "transaction date" for all but three invoices. For all but one of the invoices, the "transaction date" provided in the Summary properly reflects the "arrival date" on the corresponding bill of lading. Accordingly, the Court recalculates interest for four of the invoices as follows:

- Invoice No. 281, for $830.00: The Summary provides a proper "transaction date" of 3/21/2019 but a "payment due date" of 3/25/2019. *See* Nurenberg Decl., Ex. 2. Given that the ten-day payment period applies, the appropriate "payment due date" is 3/31/2019. Thus, by 5/12/2020, payment on Invoice No. 281 was overdue by 408 days during which time $167.00 of interest accrued.

- Invoice No. 282, for $1,080.00: The Summary provides a proper "transaction date" of 3/25/2019 but a "payment due date" of 3/26/2019. *See id.* Given that the ten-day payment period applies, the appropriate "payment due date" is 4/4/2019. Thus, by 5/12/2020, payment on Invoice No. 281 was overdue by 404 days during which time $215.17 of interest accrued.

- Invoice No. 283, for $920.00: The Summary provides a proper "transaction date" of 3/26/2019 but a "payment due date" of 3/27/2019. *See id.* Given that the ten-day payment period applies, the appropriate "payment due date" is 4/5/2019. Thus, by 5/12/2020, payment on Invoice No. 281 was overdue by 403 days during which time $182.84 of interest accrued.

14

- Invoice No. 332, for $2,630.00: The Summary provides an improper "transaction date" of 4/8/2019. *See id.* The corresponding bill of lading indicates that the produce arrived on 4/9/2019. *See* Sporn Decl., Ex. 2. Given that the ten-day payment period applies, the appropriate "payment due date" is 4/19/2019. Thus, by 5/12/2020, payment on Invoice No. 281 was overdue by 389 days during which time $504.53 of interest accrued.

Apart from the above, the Summary accurately reflects the amount of interest owed on the invoices. The Court respectfully recommends awarding Plaintiff pre-judgment interest accrued through May 12, 2020 in the adjusted amount of $13,509.05.

### 2. Pre-judgment Interest Accrued After May 12, 2020

Plaintiff requests pre-judgment interest from May 13, 2020 until the date of judgment, accruing at rate of $36.06 per day. Mot. at 8. This is the appropriate per diem rate based on the $73,119.04 of principal damages to which Plaintiff has shown it is entitled. Accordingly, the Court respectfully recommends awarding Plaintiff pre-judgment interest from May 13, 2020 until the date of judgment that accrues at the requested rate of $36.06 per day.

### 3. Post-judgment Interest

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Thus, the Court respectfully recommends awarding Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## IV. CONCLUSION

For the foregoing reasons the Court respectfully recommends Plaintiff's Motion for Default Judgment be GRANTED, finding that Plaintiff has a valid claim against Adam Trading under the trust provisions of PACA, 7 U.S.C. § 499e(c), and that Plaintiff be awarded damages

15

against Defendants, jointly and severally, as follows: $73,119.04 in principal damages; $658.00 in costs; $4,616.50 in attorneys' fees; $13,509.05 in pre-judgment interest accrued through May 12, 2020; pre-judgment interest from May 13, 2020 until the date judgment is entered, accruing at a per diem rate of $36.06; and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## V.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                    /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:  Central Islip, New York
           February 10, 2021